# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KEITH R. CALDWELL, SR.

       Plaintiff,

       v.

BARACK HUSSEIN OBAMA II,
*President of the United States, et al.*,

       Defendants.

Civil Action No. 13-1438 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff Keith Caldwell filed this *pro se* complaint against twenty-three defendants, including federal officials, federal judges, Argosy University, and the university's president, seeking a judgment that they violated his right to due process, their oaths of office, and abused their authority, due to their official actions in connection with previous cases before Judges of this District, this Circuit, the United States Tax Court, and Justices of the United States Supreme Court. For the reasons explained below, the Court dismisses this action *sua sponte* under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under the doctrine of claim preclusion. Furthermore, in light of the plaintiff's repeated filing in this Court of similar suits stemming from the same facts at issue in the instant case, he is enjoined from filing any additional complaints in this Court without obtaining pre-filing leave to do so.

## I.  BACKGROUND

### A.  Prior Lawsuits Against Various Governmental Officials and Private Parties

The plaintiff brings this lawsuit against President Obama, the Attorney General Eric Holder and the Executive Office for U.S. Attorneys, the Secretary of Education Arne Duncan, three officials with the Internal Revenue Service, twelve Federal and two Tax Court judges, and

a private university and the university president arising from actions these individuals have taken in their official capacities regarding claims asserted by the plaintiff for the first time over five years ago. A brief background of the plaintiff's prior lawsuits shows how the claims raised against each defendant have accumulated over the past eight years, as the plaintiff has filed repeated lawsuits stemming from a dispute over his personal tax liability for his tax return filed in 2004, and the plaintiff's disagreement with his former employer.

1. *Plaintiff's 2008-2010 Lawsuits in the U.S . Tax Court, District of Columbia Federal Courts and the Supreme Court*

Beginning in 2004, the Internal Revenue Service ("IRS") issued two separate deficiency notices to the plaintiff that the amount of taxes paid, as shown on the plaintiff's return, was less than the actual amount owed. *See Caldwell v. Comm'r*, No. 2008-77, 2008 WL 2595916, at *1 (T.C. July 1, 2008). The first notice, dated May 9, 2006, reflected a deficiency of $2,296, and the second notice, dated September 20, 2006, showed a deficiency determination of $7,206 related to unreported income, and $1,441 penalty. *Id.* The plaintiff challenged the IRS' deficiency determination by filing suit in the United States Tax Court. *Id.* During this proceeding, the plaintiff provided the required documentary evidence to establish his proper calculation of tax liability, and the IRS conceded that the plaintiff properly reported his income for 2004 – albeit on the wrong line. *Id.* at *2. According to the Tax Court, the IRS "prematurely assessed the deficiency and penalty" even when the plaintiff filed an appropriate petition challenging the assessment, and "issued collection notices, including levy notices, to petitioner between November 2006 and June 2007." *Id.*

Following a trial, the Tax Court "held the record open" to give the parties additional time to clarify the record. *Id.* During this post-trial period, the IRS informed the Tax Court, in a status report, that it had sent the plaintiff a "proposed stipulation decision document [] reflecting

[the IRS'] full concession." *Id.* at *2. The Tax Court closed the record and ordered the parties to submit settlement documents, and if they were unable to reach a settlement, the "Court would be inclined to enter a decision of no deficiency and no penalty . . . for taxable year 2004." *Id.* The plaintiff responded, in his own status report, that he would not agree to the stipulation, but "might seek administrative and litigation costs." *Id.*

In view of the parties' failure to reach a settlement, the Tax Court provided the plaintiff an opportunity to file a motion for administrative and litigation costs, while cautioning the plaintiff that "only substantiated, out-of-pocket costs could be awarded and instructed him to review" various rules regulating the filing of such a motion. *Id.* The plaintiff subsequently filed a one-page motion seeking the round-number of $100,000 in administrative and litigation costs. *Id.* at *3. The Tax Court sustained the IRS' objection to the plaintiff's motion, noting that although the plaintiff had succeeded on the merits of his claim regarding his tax liability, he had failed to "provide an itemized statement of costs, fees, and other expenses claimed," as required by the applicable rules, and had failed to address other statutory requirements necessary to be deemed a "prevailing party," under 26 U.S.C. § 7430(c)(4). *Id.* at *4 n. 10.

In addition to seeking administrative and litigation costs associated with the Tax Court proceeding, the plaintiff requested that the Tax Court order the IRS to return his 2005 income tax refund, which the plaintiff claimed had been seized following receipt of the two notices of deficiency and applied to his income tax liability for tax years 2003 and 2004. *Id.* at *3. In denying this request, the court noted that its "jurisdiction is limited to redetermining [the plaintiff's] tax liability for 2004," which was the tax year in dispute in that litigation, and that the court lacked the "authority to order a refund for 2005." *Id.* (citing *Naftel v. Commissioner*, 85 T.C. 527, 533 (1985)).

The plaintiff challenged the Tax Court's denial of his request for return of his 2005 tax refund in this Court by filing suit against the Tax Court and its presiding Judge (*Caldwell I* Tax Court & Judge) as well as an IRS Commissioner and two IRS employees ("*Caldwell I* Officials"). *See* Compl. ("*Caldwell I* Compl.") at 1, *Caldwell v. U.S. Tax Court*, No. 08-1427 (D.D.C. Aug. 14, 2008). This complaint alleged a myriad of wrongs, including that the plaintiff's Fifth Amendment rights were violated, *id.* at 2; the IRS committed larceny of personal property by not returning his 2005 income tax refund, *id.* at 2, 5; the Tax Court opinion was unsupported by the facts, *id.* at 3; the Tax Court failed to require the IRS to provide proof that "the 2005 tax refund was not material to the . . . matter," *id.* at 5; the IRS entered false statements during the trial, *id.* at 2; and the Tax Court failed to remove the presiding judge, *id.* The lawsuit was dismissed against the *Caldwell I* Tax Court & Judge based on the absolute immunity afforded to official judicial acts, and against the *Caldwell I* Officials because the plaintiff failed to state a claim upon which relief could be granted. *See* Order at 1, *Caldwell v. U.S. Tax Court*, No. 08-1427 (D.D.C. Apr. 16, 2009), ECF No. 15 ("*Caldwell I*"). This decision was affirmed by a panel of the D.C. Circuit. *Caldwell v. U.S. Tax Court*, 360 Fed. Appx. 161, 162 (D.C. Cir. 2010) (collectively, the district court and circuit panel judges involved in this case are referred to as the "*Caldwell I* Judges").[1]

The plaintiff petitioned for a writ of certiorari to the United States Supreme Court to challenge the dismissal of his suit. *See* Pet. for Cert., *Caldwell v. U.S. Tax Court*, No. 09-9137 (U.S. Jan. 25, 2010). Then-Solicitor General Elena Kagan elected not to respond to the petition. According to the plaintiff in his instant complaint, the decision not to respond to the petition was

---

[1] The order provides, without further detail, that the defendants' motion to dismiss was "granted essentially for the reasons stated by defendants in their motion." *Caldwell I* at 1. In the motion to dismiss, the defendants asserted defenses of absolute immunity, failure to state a claim, and lack of personal jurisdiction in support of dismissal. *See* Defs.' Mem. Supp. Mot. Dismiss at 2–9, *Caldwell v. U.S. Tax Court*, No. 08-1427, ECF No. 10.

an act of corruption, and led the Supreme Court to deny his petition. *See* Compl. at 5, ECF No.

1. In the plaintiff's view, by denying the writ, the Supreme Court "decided to deceive, obstruct

justice, and . . . hope that the case facts would simply vanish into thin air on Interstate 95." *Id.* at

5–6.

### 2. *Plaintiff's 2011 Lawsuits in the District of Columbia*

Subsequently, in 2011, the plaintiff filed suit against then-Solicitor General Kagan,

Attorney General Holder, and the *Caldwell I* Judges, asserting that they each improperly handled

his federal suit against the U.S. Tax Court. *See Caldwell v. Kagan*, 777 F. Supp. 2d 177, 179

(D.D.C. 2011)) ("*Caldwell II*"), *aff'd*, 455 Fed. App'x 1 (D.C. Cir. 2011). The plaintiff alleged

that by failing to respond to his petition for certiorari, then-Solicitor General Kagan and Attorney

General Holder "'facilitated the Supreme Court's decision to deny my petition for a Writ of

Certiorari,' and that the denial of the petition 'denied my constitutional right to due process in

that case.'" *Id.* at 180. The district court reviewing the *Caldwell II* claims found that the

plaintiff lacked standing to bring suit against the executive branch officials and that the federal

judges were immune from suit by acting in their judicial capacity. *Id.* at 179–80. Therefore, the

court dismissed the *Caldwell II* complaint. *Id.* at 179 ("[P]laintiff's complaint will be dismissed

pursuant to Federal Rule of Civil Procedure 12(b)(3) for lack of subject matter jurisdiction.").

This decision was affirmed by a second panel of the D.C. Circuit. *Caldwell v. Kagan*, 455 Fed.

App'x 1 (D.C. Cir. 2011) (collectively, the district court judge and the circuit panel involved in

this case are referred to as the "*Caldwell II* Judges"). Subsequently, the plaintiff filed a second

petition for writ of certiorari to the United States Supreme Court alleging that the *Caldwell I* and

*Caldwell II* Judges rendered "unsupported and unsubstantiated" decisions. *See* Pet. for Cert. at

10–14, *Caldwell v. Kagan*, No. 12-38 (U.S. July 15, 2012). The petition was denied.

In 2011, the plaintiff brought a third suit in this Court but this time against his former employer Argosy University and its president, alleging that they "failed to properly act when he alleged that a student had submitted a fraudulent dissertation, and removed him from the student's dissertation committee," and against the Department of Education for failing to "'evaluate' Argosy for compliance with regulatory and institutional guidelines.'" *Caldwell v. Argosy Univ.*, 797 F. Supp. 2d 25, 27 (D.D.C. 2011) ("*Caldwell III*"). The plaintiff alleged that filing the lawsuit against his former employer "'compelled'" him to "'sever'" his affiliation with the university. *Id.* (internal citations omitted). The district court reviewing the *Caldwell III* complaint determined that it failed to comply with Federal Rule of Civil Procedure 8(a), since the complaint was "unclear or . . . fail[ed] to give the defendants fair notice of the claims against them." *Id.* at 28. Specifically, the court noted that the claims against the government agency alleged no harm resulting from government action, and that there was no connection between the cause of action alleged and the facts alleged.[2] *Id.* at 28. While the defendants requested that the complaint be dismissed with prejudice, "'because the [plaintiff] is no stranger to litigation,'" the Court dismissed the complaint without prejudice, but cautioned the plaintiff that, if he "file[d] an amended complaint that merely 'recycles' the complaint currently before the Court, it may be dismissed with prejudice." *Id.* at 28–29 (citing *Hamrick v. United States*, No. 10–857, 2010 WL 3324721, at *1 (D.D.C. Aug. 24, 2010)).

Following dismissal, the plaintiff did not file an amended complaint, but instead filed a complaint against the district court judge ("*Caldwell III* District Court Judge") with the Department of Justice's Office of Inspector General ("DOJ OIG"), the Federal Bureau of

---

[2] The court noted that, while not alleged in the complaint, the plaintiff asserted in his Civil Docket Sheet that this action was brought under the False Claims Act, specifically, 31 U.S.C. §§ 3729, 3733. In dismissing this claim, the court noted that the plaintiff "refers to no false claims for payments in the complaint. Nor does he refer to any other potential sources of liability" for Argosy University and its president. *Caldwell III*, 797 F. Supp. 2d at 28.

Investigation's ("FBI") Washington Field Office, and the United States Attorney's Office. *See Caldwell v. Kagan* ("*Caldwell IV*"), 865 F. Supp. 2d 35, 40 (D.D.C. 2012). The plaintiff also filed a judicial misconduct complaint against the *Caldwell III* District Court Judge with the Judicial Council of the District of Columbia Circuit.[3] *Id.* The Chief Judge of the D.C. Circuit "dismissed the complaint before the Judicial Council, and no agency has acted on any of Caldwell's other complaints." *Id.* (internal citations omitted) (collectively, the district court judge and the Chief Judge are referred to as the "*Caldwell III* Judges").

### 3. *Plaintiff's 2012 Suit in the District of Columbia*

In 2012, the plaintiff filed a fourth suit against then-Solicitor General Kagan, Attorney General Holder, Argosy University, its president, Secretary of Education Arne Duncan, various *Caldwell I, II* and *III* Judges, the *Caldwell I* Officials, an FBI agent, an employee of the Department of Justice's Office of Inspector General ("DOJ OIG"), and the United States Attorney's Office in the District of Columbia ("DC USAO").[4] *See Caldwell IV*, 865 F. Supp. 2d at 39, *aff'd*, No. 12-5298, 2013 WL 1733710, at *1 (D.C. Cir. Mar. 22, 2013) (*per curiam*). This complaint alleged that the plaintiff was denied due process of law when then-Solicitor General Kagan failed to respond to his petition, *id.* at 40–41, when Attorney General Holder failed to oversee the Solicitor General's decision making, *id.*, when Secretary Duncan authored a motion to dismiss that led to a dismissal in *Caldwell III*, *id.*, and when the FBI, DOJ OIG, and DC USAO failed to respond to his complaints of criminal judicial-misconduct against the *Caldwell II* District Court Judge, *id.* at 44. Additionally, the plaintiff alleged that that the variously named *Caldwell I*, *II*, and *III* judges rendered improper decisions in his cases. *Id.* at 42. The plaintiff

---

[3] While proceedings related to judicial misconduct complaints made to the Judicial Council of the District of Columbia Circuit are confidential, *see* 28 U.S.C. § 360(a), this complaint to the Judicial Council formed the basis of the plaintiff's cause of action in *Caldwell IV* and was thereby disclosed by him. *Caldwell IV*, 865 F. Supp. 2d at 40.
[4] The plaintiff chose not to name as a defendant one of the two IRS employees previously named in *Caldwell I*, and did not include the Court of Appeals panel from *Caldwell II*, but did name as defendants the *Caldwell II* district court judge and the Circuit's Chief Judge, who reviewed his judicial-misconduct complaint.

raised the same allegations against Argosy University and its president as in *Caldwell III*: namely, that they failed to act on allegations that a student submitted a fraudulent dissertation and instead punished the plaintiff for raising the issue. *Id.* at 44. Finally, the plaintiff alleged that the *Caldwell I* Officials failed to supervise the IRS Office of General Counsel. *Id.* at 43.

The district court reviewing the *Caldwell IV* complaint determined that the "plaintiff lacks standing against some defendants, some enjoy immunity against plaintiff's claims, several of plaintiff's claims are barred by *res judicata*, and some claims fail to state a claim upon which relief may be granted." *Id.* at 40. For the various alleged due process violations, the court found that the plaintiff lacked standing to challenge the actions of then-Solicitor General Kagan, Attorney General Holder, and Secretary Duncan, and alternatively that the "claims against all *three* of these defendants must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted." *Id.* at 42 (emphasis added). The alleged due process violations against the FBI agent, DOJ OIG employee, and the DC USAO were dismissed because decisions not to prosecute are unreviewable. *Id.* at 44. The claims against all of the judicial officials were dismissed under Rule 12(b)(6) because "absolute immunity protects each of the judges from liability." *Id.* at 43. The claims against the *Caldwell I* Officials were dismissed as precluded because they were the same previously dismissed claims brought against these same defendants. *Id.* at 43. Finally, the claims against Argosy University and its president were dismissed since they merely repeated the same claims previously asserted in *Caldwell III*, which claims had been dismissed, with prejudice, for failing to comport with Rule 8(a) after being cautioned by the *Caldwell III* district court that merely recycling his complaint would be insufficient, and also under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Id.* at 44–45.

The decision was subsequently affirmed by the D.C. Circuit. *Caldwell v. Kagan*, No. 12-5298, 2013 WL 1733710, at *1 (D.C. Cir. Mar. 22, 2013) (collectively, the district court judge and circuit panel are referred to as the "*Caldwell IV Judges*"). The plaintiff has indicated his intention to file another petition for writ of certiorari to the United States Supreme Court arising from this dismissal of this fourth federal complaint. *See* Compl. at 28.

**B.     Plaintiff's Instant Complaint**

The plaintiff has now filed his fifth complaint in this Court. This complaint raises the same allegations against the same parties in *Caldwell I*, *II*, *III*, and *IV*, and adds as new defendants the *Caldwell IV* Judges, President Obama, Chief Justice Roberts, and the Executive Office of United States Attorneys ("EOUSA").[5] Compl. at 1–3.[6] The plaintiff's complaint asserts seven causes of action ("COA"): (1) "[v]iolations of the plaintiff's Fifth and Fourteenth Amendment Due Process Rights ("First COA"), *id.* at 4–9; (2) "[v]iolation[s] of the code of conduct, the oath of office, and the federal court's [sic] published doctrine in regards to the ethics and integrity of the judicial process and procedures" ("Second COA"), *id.* at 9–15;  (3) "[v]iolation of the plaintiff's right to trial by jury" ("Third COA"), *id.* at 15; (4) "[v]iolation of the plaintiff's constitutional rights relevant to 42 U.S.C § 1983" ("Fourth COA"), *id.* at 16–18; (5) [v]iolations of judicial codes of conduct ("Fifth COA"), *id.* at 18–19; (6) [o]bstruction of Justice ("Sixth COA"), *id.* at 19–23; and (7) "[f]ailure to manage and safeguard public tax dollars on the Part of the U.S. Department of Education," ("Seventh COA"), *id.* at 23. While not detailed in the complaint, the plaintiff's Civil Docket Sheet indicates a demand of $50,000,000

---

[5] In the instant case, the plaintiff continues to name as a defendant William Gregg, who was also among the *Caldwell I* Officials, and the plaintiff has added as defendants another IRS Commissioner and official not named in his prior lawsuits. Compl. at 3.
[6] The plaintiff has not organized his complaint in numbered paragraphs and therefore citations to the complaint refer to page numbers.

associated with the alleged violations mentioned in his seven causes of action. *See* Civil Docket Sheet at 2, ECF No. 1-1.

Along with the complaint, the plaintiff moved to use a P.O. Box as his contact address in this matter. *See* Motion to Request Use of Post Office Box ("Mot. Request Use P.O. Box") at 1, ECF No. 3. The Court denied this request under Local Civil Rule 5.1(e)(1), which requires that the "first filing by or on behalf of a party shall have in the caption the name and full residence address of the party." Order to Show Cause at 1, ECF No. 4. In addition, since the instant complaint constitutes the fifth complaint in this Court, against virtually the same defendants and premised on the same set of facts previously considered and dismissed, the Court ordered the plaintiff to show cause why the Court should not issue an injunction barring the plaintiff from filing new complaints in this Court and explaining why his instant complaint is not frivolous, harassing, or duplicative.[7] *See* Order to Show Cause at 2.

The plaintiff subsequently filed two motions. The first motion is titled a "Motion is[sic] Response to the Order to Show Cause," ("Mot. Response Order to Show Cause") at 1, ECF No. 5, but contains no substantive discussion of why the instant complaint is not frivolous, harassing, or duplicative. Rather, in this motion the plaintiff "strongly request[s] that the trial judge reconsider the court's denial of the use of the plaintiff's post office box as his official mailbox." Mot. Response Order to Show Cause at 5. Consequently, the Court construes this motion as seeking reconsideration of the denial of the plaintiff's Motion to Request Use of Post Office Box ("Mot. Request Use P.O. Box") at 1, ECF No. 3; Order to Show Cause at 2, ECF No. 4 ("**ORDERED** that the plaintiffs Motion to Request Use of Post Office Box, ECF No. 3, is DENIED" and directing the plaintiff to file his current residence address).

---

[7] Even though the Court denied the plaintiff's request to use a P.O. Box as violative of the Court's local rules, the Order to Show Cause was mailed by the Clerk's office to both the plaintiff's old address and the P.O. Box address maintained by plaintiff. Order to Show Cause at 2.

The plaintiff's second motion is titled "Motion to Order the District Court to Remove Beryl A. Howell From Presiding Over the Above-Titled Case," ("Mot. Recuse"), ECF No. 6. In this motion, the plaintiff states his conclusion that "the order [to show cause] represents the ravings of a lunatic" and demands the presiding judge "be immediately be removed from the above-titled case and replaced by a member of the district court Bar who meets the criteria set forth in the complaint that the district court has docketed." *Id.* at 1, 7. Both of the plaintiff's pending motions will be discussed below.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); FED. R. CIV. P. 8(a). Federal Rule of Civil Procedure Rule 12(b)(6) tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Although "detailed factual allegations" are not required, a complaint must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Twombly,* 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557) (alteration in original). The Supreme Court has stated, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556).

*Pro se* plaintiffs are "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, even a *pro se* complainant "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Id.* (quoting *Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009)).

## III.  DISCUSSION

At the outset, the Court will address the two pending motions that were filed in response to the Order to Show Cause on why a pre-filing injunction would be inappropriate. Next, the Court will evaluate the allegations raised in the complaint under Federal Rule of Civil Procedure 12(b)(6). In this Circuit, "[t]he district court may *sua sponte* dismiss a claim pursuant to Rule 12(b)(6) without notice where it is 'patently obvious' that the plaintiff cannot possibly prevail based on the facts alleged in the complaint." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012) (citing *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990)); *see also Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994) ("Complaints may . . . be dismissed . . . *sua sponte* . . . under Rule 12(b)(6) whenever the plaintiff cannot possibly win relief.") (internal quotation marks omitted). As the plaintiff has failed to plead sufficient facts to allege even a possibility of relief on any of his seven causes of action, the Court dismisses the complaint in its entirety.

### A.  The Plaintiff's Motions for Reconsideration and Recusal are Denied

#### 1.  *Motion for Reconsideration*

The plaintiff's first motion requests that this Court reconsider the Order denying use of a P.O. Box as a primary address. As noted, the Court has construed this motion as seeking reconsideration under Federal Rule of Civil Procedure 60(b). In denying the original motion, the Court noted that "while the plaintiff strongly believes it is in the best interest of his safety to omit

his physical address from the proceeding, he fails to allege any specific source of endangerment." Order to Show Cause at 2 (internal citations and quotation marks omitted). In his motion for reconsideration, the plaintiff asserts "[t]he fact that the plaintiff has sued senior officials of the United States government places his life in danger. The danger is very real and obvious even though [the district court] seems out of touch with this reality." Mot. Response Order to Show Cause at 3.

Since the Court's denial of the plaintiff's motion to use a P.O Box was in strict compliance with the Local Rules of this Court, none of the enumerated avenues of relief from an order under Rule 60(b) applies. As the Court has made clear, while the plaintiff may feel real concern for his safety, he has presented no factual allegation to warrant the Court's granting an exception to the Local Civil Rules. Merely indicating that he sued several officials of the United States government in their official capacity, as he has done in several previous lawsuits without any alleged adverse effect, does not suffice to show any risk of danger to the plaintiff's life as he appears to believe. Accordingly, because the plaintiff has failed to articulate sufficient reason necessitating the use of a P.O. Box, the Court denies the plaintiff's motion for reconsideration.

## 2. *Motion for Recusal*

Second, the plaintiff seeks an order from the district court removing the presiding judge in this matter. The Court construes this motion as a motion to recuse the district court judge under 28 U.S.C. § 455, "which provides that a judge 'shall disqualify himself' when 'his impartiality might reasonably be questioned.'" *S.E.C. v. Loving Spirit Found. Inc.*, 392 F.3d 486, 489 (D.C. Cir. 2004).

The plaintiff has provided no reasonable basis for questioning the impartiality of this Judge to meet the requirement for recusal under the general provision of section 455(a), nor satisfied any of the other specific provisions of section 455(b) to warrant recusal. To the extent

that the plaintiff disagrees with the Court's orders issued to date in this case, such judicial actions alone almost never establish a valid basis for a bias or partiality motion. *See Liteky v. United States*, 510 U.S. 540, 555 (1994); *Loving Spirit Found, Inc.,* 392 F.3d at 494 (observing that adverse judicial decisions "virtually never provide a basis for recusal"). This motion for recusal is denied. *See In re Kaminski*, 960 F.2d 1062, 1065 n.3, (D.C. Cir. 1992) (per curiam) ("A judge should not recuse himself based upon conclusory, unsupported or tenuous allegations.").

**B.    Federal Judges are Absolutely Immune from Suit for Performing of Their Official Acts**

The plaintiff asserts six of his seven COAs against the federal judicial defendants and one COA against the Tax Court and Tax Court Judge. These claims run the gamut, including due process violations (First COA); violations of the judicial codes of conduct and oaths of office (Second and Fifth COAs); denial of the plaintiff's right to a jury trial (Third COA); constitutional violations under *Bivens* (Fourth COA); and obstruction of justice (Sixth COA). These COAs fail to state a claim upon which relief can be granted because federal district court, appellate and Tax Court judges are absolutely immune from lawsuits predicated, as here, on their official acts.

As the Supreme Court has made clear, federal judges are absolutely immune from lawsuits grounded in the performance of official acts. *See Forrester v. White*, 484 U.S. 219, 225 (1988); *Stump v. Sparkman*, 435 U.S. 349, 355–57 (1978); *see also Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993). This is because "judges must act upon [their] convictions, without apprehension of personal consequences to themselves." *Mikkilineni v. PA*., No. 02-1205, 2003 U.S. Dist. LEXIS 13669, at *16 (D.D.C. Aug. 5, 2003) (internal citations omitted). Seeking relief through an appeal to an appellate court is the sole remedy available to a litigant who "seeks to challenge the legality of decisions made by a judge in her judicial capacity. *Id.* (internal

citations omitted).  "The acts of assigning a case, ruling on pretrial matters, and rendering a decision all fall within a judge's judicial capacity."  *Id.* (internal citations omitted).

In the instant action, the acts challenged by the plaintiff apparently include reviewing pending motions to dismiss, the viability of plaintiff's claims under Rule 12(b)(6) and petitions for certiorari and the issuing of decisions reflecting the outcome of such review.  These are quintessential official judicial acts.  As absolute immunity protects the district, circuit, and tax court judges in *Caldwell I, II, III, and IV,* as well as the Chief Justice, in the performance of their official acts, the plaintiff's causes of action against all judicial defendants are dismissed.[8]  Since the Third, Fifth and Sixth COAs appear to be asserted solely against judicial defendants, those three claims are dismissed in their entirety.

C.     **First COA: The Plaintiff has Failed to Plead Sufficient Facts to Allege a Due Process Violation**

The plaintiff's First COA alleges a violation of his due process rights against various Executive Branch officials, including President Obama, then-Solicitor General Kagan, Secretary Duncan and Attorney General Holder (as well as the judicial defendants), stating that because of their "earth shattering" "incompetence and [] corruption," the "2005 tax refund check remains an

---

[8] The plaintiff's claims against the judges would also fail for additional reasons that do not necessitate full discussion.  For example, the plaintiff's Third COA alleges violations of the plaintiff's right to a jury trial.  The Seventh Amendment right to a trial by jury extends only to issues "triable by right of a jury," Fed. R. Civ. P. 38(b), which necessarily requires a predicate legally viable claim, which is wholly missing in the instant complaint.  *See Blackmon v. Am. Home Prods. Corp.*, 328 F. Supp. 2d 647, 657 (S.D. Tex. 2004) ("The Seventh Amendment entitles litigants to a jury trial on claims within its ambit only to the extent that those claims are viable.").  Similarly, the Fifth COA, claiming violations of judicial "code of conduct directives that are published on the websites" of the federal and Tax courts, Compl. at 18, does not allege any specific conduct violative of such codes -- other than judicial rulings contrary to the plaintiff's desired outcome -- and, in any event, such codes of conduct provide no private right of action.  *See Church of Scientology Int'l v. Kolts*, 846 F. Supp. 873, 882 (C.D. Cal. 1994) ("Given that no private right of action exists for violations of the Judicial Code, Plaintiff can state no facts which would create a cause of action."); *Weston v. Schluler*, 2004 U.S. Dist. LEXIS 30129 at * 5 (N.D. Okla. Mar. 4, 2004) (finding that the Judicial Code provides no private right of action).  Likewise, the plaintiff's Sixth COA, asserting that the federal judges obstructed justice by dismissing his previous lawsuits, *see* Compl. at 21, also fails because the plaintiff does not have a private right of action to enforce this criminal statute.  *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994) (finding no private right of action from a "bare criminal statute"); *McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162, 1164 (D.C. Cir. 1995).

*open* issue . . ." Compl., at 8 (emphasis in original). The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.[9] The Due Process Clause includes a "substantive component, which forbids the government to infringe certain 'fundamental' liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–302 (1993) (emphasis in original). It also includes a procedural component, which protects the opportunity to be heard "'at a meaningful time and in a meaningful manner,'" what the Supreme Court has characterized as "the fundamental requirement of due process." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

While the complaint does not indicate whether the plaintiff is pleading a violation of substantive or procedural due process, the allegations appear to assert a violation of procedural due process and the Court will construe these allegations as such. *See* Compl. at 7 ("Amendment 14, § 1 dealing with due process . . . specifies that deprivation of property without due process of law constitutes a constitutional violation); *id.* at 8 ("[O]ur right to protection under the

---

[9] The plaintiff invokes the Fourteenth Amendment's due process protections. *See e.g.*, Compl. at 7. To the extent that the complaint names federal actors as defendants, there is no "state action," which is required to invoke the Fourteenth Amendment. *See United States v. Morrison*, 529 U.S. 598, 621 (2000) ("Foremost among these limitations is the time-honored principle that the Fourteenth Amendment, by its very terms, prohibits only state action . . . the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States."). Moreover, the plaintiff has alleged violations under 42 U.S.C. § 1983. Compl. at 16–17. Just as the Fourteenth Amendment requires state action, § 1983 requires that officials act "under color of state law." *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."); *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991)("[t]o state a claim under [S]ection 1983, a plaintiff must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted 'under color of' the law of a state, territory or the District of Columbia."). Mindful that documents filed by *pro se* litigants are held to less stringent standards, the Court construes the allegations under § 1983 as purported violations of constitutional rights under the federal analog *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See also Marshall v. Fed. Bureau of Prisons*, 518 F. Supp. 2d 190, 193 (D.D.C. 2007) (considering claim against individual defendants under *Bivens* rather than § 1983 as plead) (citing *Hartman v. Moore*, 547 U.S. 250, 254 n. 2 (2006)).

16

procedural provision of due process cannot be violated.").  In fact, the complaint alleges that this suit is a continuation of the plaintiff's on-going attempt to recover an outstanding tax refund, a clam originally raised by the plaintiff in 2008, before the United States Tax Court.  *Id.* ("The United States government, specifically the IRS, has left unsettled the matter concerning the plaintiff's . . . tax refund; a grand total of eight-years and counting.").

To maintain a procedural due process claim, a plaintiff must establish that the government has deprived him of a protected interest without due process.  *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) ("Only after finding the deprivation of a protected interest do[es] [the Court] look to see if the government's procedures comport with due process.") (quoting *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 59 (1999)).  To establish a protected liberty or property interest, the plaintiff must demonstrate that the Constitution or a federal or state statute grants him a protected right.  *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1124 (D.C. Cir. 1985) ("[T]he interests that are comprehended within the meaning of either liberty or property, as covered by the due process clause of the Constitution, are those interests which have 'attain[ed] constitutional status by virtue of the fact that they have been initially recognized or protected by state law' or federal law.") (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)).  Here, the plaintiff apparently alleges that the property interest for which he was deprived is the "2005 tax refund check," Compl. at 8, which the Tax Court concluded it lacked the authority to compel the IRS to return.  *Comm'r*, 2008 WL 2595916 at * 3 n.10; *see also Naftel v. C.I.R.*, 85 T.C. 527, 533 (1985) ("While the Court has jurisdiction to determine an overpayment, it has no authority to order or deny a refund.").

Assuming, *arguendo*, that the plaintiff has a legitimate claim of entitlement to and protected property interest in the 2005 tax refund, he has received sufficient process.  The

Supreme Court has made clear that "[o]nce it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotations and citation omitted). As the plaintiff notes in his complaint, "[t]his matter was presented to the U.S Court of Appeals (3 times) and the [Supreme Court] (2 times)," and includes "more than 100 court filings." Compl. at 7–8. Thus, the plaintiff has had ample opportunity to be heard, including petitioning to the highest court in the land.

Additionally, all the government officials named as defendants, by virtue of acting in an official capacity, enjoy qualified immunity against "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is a defense that shields officials from suit if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011) (internal quotation marks, brackets, and citations omitted). To determine whether the defendant is entitled to qualified immunity, the court assesses whether: (1) the facts alleged by a plaintiff make out a violation of a constitutional right; and (2) the right at issue was 'clearly established' at the time of the defendant's alleged misconduct. *Jones v. Horne*, 634 F.3d 588, 597 (D.C. Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) and *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Here, the plaintiff fails to plead a constitutional violation stemming from the defendants' conduct and , thus, their actions are protected by qualified immunity. *See also Caldwell IV*, 865 F. Supp. 2d at 42. Accordingly, the plaintiff cannot possibly win relief on his due process claims. The

plaintiff's first COA is therefore dismissed for failure to state a claim upon which relief can be granted.[10]

###    C.    Second COA: The Plaintiff's Claims Against President Obama and Other Government Officials for Violation of their Oaths of Office Fail to State a Claim

The plaintiff's Second COA is barely intelligible but appears to assert that the President of the United States violated his oath of office in some way by nominating Justice Elena Kagan to the U.S. Supreme Court, and that "IRS and DOJ attorneys had lied while presenting" a case against the plaintiff. Compl. at 13. Not only is there no plausible factual basis alleged for this purported claim, there is no legal basis for this COA. The oaths that government officials take in assuming their office do not create any private right of action and, therefore, this claim must be dismissed. *See, e.g.*, *Scheiner v. Bloomberg*, No. 08 Civ. 9072, 2009 U.S. Dist. LEXIS 21176, at *9 (S.D.N.Y. Mar. 17, 2009); *Mechler v. Hodges*, No. C-1-02-948, 2005 U.S. Dist. LEXIS 45448, at *20-21 (S.D. Ohio June 15, 2005); *Simon v. N. Farms*, No. 97-1164-JTM, 1997 U.S. Dist. LEXIS 13472, at *17-18 (D. Kan. Aug. 26, 1997).

---

[10] The plaintiff's first COA alleging a due process violation against the government officials would also fail for additional reasons that do not necessitate full discussion. For example, this claim against the government officials has previously been asserted and dismissed in *Caldwell IV*. *See e.g.*, *Caldwell IV*, 865 F. Supp. 2d at 41–42 ("The claims against Secretary Duncan must also be dismissed because his activities lack a causal connection to the plaintiff's claimed harm" and the plaintiff has failed "to state a claim upon which relief may be granted"); *id.* at 43 (noting that the claims against the *Caldwell I* Officials are dismissed based on the doctrine of claim preclusion); *id.* at 44 (highlighting that the claims against the United States Attorneys must be denied because decisions not to prosecute are unreviewable). Therefore, this claim is barred under claim preclusion. *See Natural Res. Def. Council v. EPA*, 513 F.3d 257, 260-61 (D.C. Cir. 2008) (claim preclusion bars litigation of claims that were or should have been raised in an earlier suit). This doctrine "serves 'the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.'" *Sheptock v. Fenty*, 707 F.3d 326, 330 (D.C. Cir. 2013) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

**D.    Fourth COA: The Plaintiff's Claims Against Government Officials and Others under 42 U.S.C. § 1983 Fails to State a Claim**

The plaintiff's Fourth COA alleges violations of 42 U.S.C. § 1983 against "[s]enior U.S. government officials and judicial branch officers."  Compl. at 16.[11]  As noted, the Court construes this claim against federal actors as a *Bivens* action, but the factual allegations in support of this claim are sparse and barely intelligible.  The plaintiff merely reiterates his view that the judges who reviewed his prior cases were "completely prejudice [sic]" and "*back-scratching*" and that they "slid under the *umbrella of corruption* due to the *SC* protection to Elena Kagan and Eric Holder." *Id.* at 16-17 (emphasis in original).  Despite the provocative language used in this claim, these allegations amount merely to disagreement with the official actions taken by government officials with regards to the plaintiff's prior legal proceedings.  To plead a *Bivens* claim, the plaintiff must allege that the federal officers named as defendants violated his constitutional rights.  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  "Critical to a *Bivens* claim is an allegation 'that the defendant federal official was personally involved in the illegal conduct.'"  *Harris v. Holder*, 885 F. Supp. 2d 390, 397-398 (D.D.C. 2012) (citing *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997)); *Voinche v. Obama*, 744 F. Supp. 2d 165, 177 (D.D.C. 2010).  The complaint is devoid of facts, let alone a plausible theory, regarding any violation of his constitutional rights through the adjudication of his prior lawsuits.  Therefore, this Fourth COA must be dismissed.

---

[11] The plaintiff also names Argosy University and its President in this COA, even though they are not state or federal actors and the plaintiff provides no allegation that their actions implicate any state action.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) ("Section 1983 liability attaches only to individuals 'who carry a badge of authority of a State and represent it in some capacity'").  Thus, no claim for relief through *Bivens* or under § 1983 is plausible and this claim against these private parties is dismissed.

### E.     Seventh COA: The Plaintiff's Claim Against DOE, USAO and Private Parties Is Barred

The plaintiff's Seventh COA is against Argosy University, its president, and "the U.S Department of Education, the office of the United States Attorney's office [sic]," Compl. at 23,[12] for allegedly failing "to maintain and safeguard public tax dollars." *Id.* This claim has already been previously dismissed with prejudice in *Caldwell IV*, 865 F. Supp. 2d at 45. Specifically, the district court in that case found that the plaintiff's "claims in his . . . complaint[s are] simply restatements of the claims in his earlier complaint." *Id.* By electing "to simply recycle his previous claims into his current complaint, the claims against these defendants will be dismissed with prejudice." *Id.* The plaintiff's instant complaint alleges even less. Apparently, the factual basis underlying this claim is that "the U.S. government permitted Argosy Univerity (AU), to award an unearned doctorate degree to a former AU student in 2010." Compl. at 23. The plaintiff also chastises the defendants and the *Caldwell III* district court judge for failing to "read up on the power of the federal government before dismissing his suit." Compl. at 23. As these claims have been previously dismissed with prejudice, the Seventh COA is barred by the doctrine of claim preclusion.

Under the doctrine of claim preclusion, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010) (citation omitted). The doctrine of claim preclusion helps advance the "the conclusive resolution of disputes" and "preclude[s] parties from contesting matters that they have had a full and fair

---

[12] While this cause of action refers to the U.S. Department of Education and the U.S. Attorney's Office as defendants, these entities are not listed as defendants in the caption of the complaint. *See* Compl. at 1–3. The plaintiff, however, has named as defendants Secretary Duncan and the Executive Office of United States Attorneys, and the Court construes the Seventh COA to allege claims against these defendants.

opportunity to litigate[,] protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979) (citations omitted). Furthermore, "a 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Even if a decision is wrongly decided, as the plaintiff alleges, preclusive effects apply. *See City of Arlington v. FCC*, 133 S. Ct. 1863, 1869 (2013) ("A court's power to decide a case is independent of whether its decision is correct, which is why even an erroneous judgment is entitled to [claim preclusion] effect.").

In the instant action, all of the requirements for claim preclusion are met. The plaintiff's complaint asserts the same claims as alleged in *Caldwell III* and *IV* against Argosy University and its president. *See Caldwell III*, 797 F. Supp. 2d at 26; *Caldwell IV*, 865 F. Supp. 2d at 44 ("Plaintiff in his complaint also restates the claims against Argosy University and David Erekson that he made in his earlier case against these defendants."). These claims have now been dismissed in two prior cases. *See Caldwell III.*, 797 F. Supp. 2d at 28; *Caldwell IV*, 865 F. Supp. 2d at 45. Additionally, the plaintiff's previous claim against "the Department of Education alleging a failure to properly evaluate Argosy University for compliance with federal regulations for awarding degrees," was dismissed. *Caldwell IV*, 865 F. Supp. 2d at 39, 42. These dismissals operate as a final adjudication on the merits.[13] Accordingly, the plaintiff's Seventh COA is barred by the doctrine of claim and issue preclusion and is, therefore, dismissed.

---

[13] Under Federal Rule of Civil Procedure 41(b), "any dismissal not under this rule . . . operates as an adjudication on the merits." Fed. R. Civ. P. 41(b); *Rollins v. Wackenhut Services, Inc.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J. concurring) (noting that dismissals under Rule 12(b)(6) are "synonymous with a dismissal with

## IV.    INJUNCTION AGAINST FURTHER FILINGS IN THIS COURT WITHOUT PRIOR COURT PERMISSION

"The constitutional right of access to the courts . . . is neither absolute nor unconditional." *In re Green*, 669 F.2d 779, 785 (D.C. Cir. 1981). "Courts in this and other circuits have been required to respond to prolific *pro se* litigants with 'determination and imagination.'" *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C. Cir. 1985) (internal citations omitted). "[I]n fashioning a remedy to stem the flow of frivolous actions, a court must take great care not to 'unduly impair[ ] [a litigant's] constitutional right of access to the courts.'" *Id.* (internal citations omitted). If a litigant, however, continues to abuse the judicial process by filing frivolous, duplicative, and harassing lawsuits, "a Court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice." *Id.*

The D.C. Circuit took a close look at the merits of imposing pre-filing injunctions on overly litigious litigants in *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988), concluding that courts must properly balance the protection of due process rights with ending groundless, vexatious litigation. In this jurisdiction, three steps are required before a district court may issue a pre-filing injunction. *See Powell*, 851 F.2d at 431. First, concerned with the potential denial of due process rights, the Court must provide notice and the opportunity to be heard. *See id.*; *see also Rodriguez v. Shulman*, 844 F. Supp. 2d 1, 15 (D.D.C. 2012) ("Due process requires notice and an opportunity to be heard."). Second, the court must develop a record for review "in order to further ensure that the filer's due process rights are not violated." *Rodriguez*, 844 F. Supp. 2d at 15; *see also Kaempfer v. Brown*, 872 F.2d 496, 496 (D.C. Cir. 1989) (citing *Powell*, 851 F.2d at 431). In this regard, the D.C. Circuit has stated that the district courts should consider "both the number and content of the filings" when considering an injunction. *Powell*, 851 F2d. at 434.

---

prejudice" even when the court does not include the language "with prejudice") (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001)).

Finally, to avoid vacatur of a pre-filing injunction, the court must "make substantive findings as to the frivolous or harassing nature of the litigant's actions." *Powell*, 851 F.2d at 431; *Colbert v. Cincinnati Police Dep't*, 867 F. Supp. 2d 34, 35 (D.D.C. 2011). These pre-requisites for imposition of a pre-filing injunction are amply met here.

First, the plaintiff has received notice and been provided an opportunity to be heard on the matter of whether a pre-filing injunction should issue. *See* Order to Show Cause at 2 (ordering plaintiff to set "forth reasons why the Court should not issue an injunction barring the plaintiff from filing new complaints in this Court and explaining why his instant complaint is not frivolous, harassing, or duplicative."). The plaintiff not only received this order but also responded to it, stating that "The attached ORDER TO SHOW CAUSE is the district court's latest act of lunacy that basically reads like a ***threat*** against the plaintiff for exercising his constitutional right to sue a laundry list of CORRUPT federal justices, judges, attorneys, and senior members of the Obama administration." Mot. Remove at 4 (emphasis in original).

Second, in evaluating whether the record is sufficient to warrant a pre-filing injunction, the Court has reviewed the close similarities between and among the instant suit and his previous four lawsuits, all of which have the same goals: namely to address the "unsettled . . . matter concerning the plaintiff's 2005 tax refund," Compl. at 7; *see also Caldwell I* Compl. at 5, and/or to penalize Argosy University and its President, Compl. at 23. On both of these matters, the plaintiff has admittedly received significant judicial review. Compl. at 7–8 ("This matter was presented to the U.S Court of Appeals (3 times) and the [Supreme Court] (2 times)," and includes "more than 100 court filings."). After each dismissal, the plaintiff has added to his growing "laundry list," Mot. Remove at 4, of defendants each successive judge with a role in adjudicating the case, including the presiding trial judge and reviewing panel of the Court of

Appeals. Although each Judge to consider the plaintiff's various cases has taken the time to review the claims and explain the reasons for insufficiency and dismissal, the plaintiff has challenged the reasons as corrupt in some manner. At this pace, it will not be long before each Judge of this Court and the Circuit Court of Appeals has an opportunity to be named as a defendant by this plaintiff. Moreover, the plaintiff continues to assert the same facts in claims against Argosy University and its president even though those claims have been previously reviewed and dismissed with prejudice. *See Caldwell IV*, 865 F. Supp. 2d at 45.

With respect to the final consideration regarding the frivolous or harassing nature of the litigant's actions, the D.C. Circuit has cautioned that a pre-filing injunction "should 'remain very much the exception to the general rule of free access to the courts,'" and that "'the use of such measures against a *pro se* plaintiff should be approached with particular caution.'" *Powell*, 851 F.2d at 431 (quoting *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980)). Fully cognizant of the impetus towards caution, the Court nonetheless finds that the thoughtful explanations provided in the judicial decisions issued in the plaintiff's prior cases regarding the reasons compelling the previous dismissals of his claims have not satisfied the plaintiff, who has continued unabated in filing lawsuits seeking repeated reviews of his virtually identical claims. In this regard, the plaintiff has already made clear his intent to file a third petition for writ of certiorari following the dismissal in *Caldwell IV*. *See* Compl. at 28.

Plaintiff's repetitive filings of meritless claims against federal officials, federal judges and private parties, compounded by the cycle of adding on as new defendants each federal judge who has made a decision against the plaintiff, rises to the level of harassing and vexatiousness to warrant a pre-filing injunction. As another Judge on this Court stated, "[t]o protect the integrity of the courts and to prevent further harassment of the defendants, the plaintiff's filing of

duplicative claims must stop." *Mikkilineni v. Penn Nat. Mut. Cas. Ins. Co.*, 271 F. Supp. 2d 142, 143 (D.D.C. 2003); *see also Sparrow v. Reynolds*, 646 F. Supp. 834, 839 (D.D.C. 1986) ("[A] continuous pattern of groundless and vexatious litigation can, at some point, support an order against further filings of complaints without the permission of the court.") (citations omitted).

The Court is mindful that other cases in which pre-filing injunctions have been considered and imposed have involved a more significant number of cases filed against a number of different defendants by the same plaintiff subject to the injunction. *See, e.g.*, *Anderson v. District of Columbia Pub. Defender Serv.*, 881 F. Supp. 663, 665 (D.D.C. 1995) (noting plaintiff had filed 33 complaints "'against a variety of prosecutors, defense counsel (including the Public Defender), judges, [and] the Bar Counsel of the District of Columbia Bar,' and 'appeals and applications to the Court of Appeals for writs of mandamus as well as filing charges with the Chief Judges of this Court and the Circuit, seeking reassignment of his cases or recusal of judges.'") (internal citations omitted); *Kaufman v. I.R.S.,* 787 F. Supp. 27, 29-30 (D.D.C. 2011) (noting plaintiff filed at least 15 *pro se* suits in federal district and bankruptcy courts over the last ten years, premised on a variety of claims, almost all of which have been dismissed, warranted pre-filing injunction).

Nonetheless, the requisite finding of harassment or vexatiousness does not rest solely on some arbitrary threshold number of lawsuits filed but rather must also take account of the repetitiveness and nature of the claims. *See Stich v, v. United States*, 773 F. Supp. 469, 470 (D.D.C. 1991) (noting that by filing an identical complaint to one previously dismissed, the "[p]laintiff has shown an appalling lack of respect for the judicial branch"). Re-filing the same complaint against the same defendants, as is the case in the instant complaint, is harassing, particularly when the only notable differences between the otherwise repetitive lawsuits is the

addition as new defendants of the judges or other government officials involved in an official capacity in a previously dismissed suit. *See Mikkilineni*, 271 F. Supp. 2d at 143 (finding that the "plaintiff has filed similar claims repeatedly" forcing the "defendants to spend resources litigating previously-resolved claims" as appropriately harassing in nature to warrant an injunction); *Kaufman*, 787 F. Supp. 2d at 29–30 ("It appears that, whenever Plaintiffs are unhappy with the result of a case . . . they file a new lawsuit . . . suing the judge, court staff, lawyers, and/or other government officials involved in the previous case"); *Lee v. State Comp. Ins. Fund*, No. 05-670, 2005 WL 1903343, at *1 n.5 (D.D.C. July 13, 2005) (finding when plaintiff had filed five prior lawsuits relating to his same workers' compensation award against the same defendants, court concluded that injunction should issue). Such repeated filing of meritless claims consumes judicial resources and attention and thereby impedes the administration of justice generally. *Kauffman*, 787 F. Supp. 2d at 36 (citing plaintiff's "improper filings," court concluded that "Plaintiffs are impeding the administration of justice and abusing their electronic filing privileges").

The Court finds that the plaintiff's repeated filings of meritless complaints in this district is both vexatious and harassing to the parties named as defendants and imposes an unwarranted burden on "the orderly and expeditious administration of justice." *Urban*, 768 F.2d at 1500; *see also Davis v. United States*, 569 F. Supp. 2d 91, 93, 98-99 (D.D.C. 2008) (imposing a pre-filing injunction on plaintiffs after filing "their fourth essentially identical suit" because "this repetitive presentation of essentially identical claims wastes limited judicial resources"). Accordingly, the plaintiff is enjoined from any subsequent filing in the District Court for the District of Columbia without first seeking leave from the Court.

**V.    CONCLUSION**

For the aforementioned reasons, the plaintiff's complaint is dismissed *sua sponte* for failure to state a claim.  Additionally, the plaintiff is enjoined from filing in this Court any new civil action without first seeking leave to file such complaint.  In seeking leave to file any new complaint, the plaintiff must explain what new matters are raised to warrant the filing of a new complaint.

An appropriate Order accompanies this Memorandum Opinion.

Date: November 20, 2013

_____
BERYL A. HOWELL
United States District Judge